# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES DORSEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 14 C 7627 |
| TIMOTHY WASHINGTON, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

James Dorsey is an inmate at Stateville Correctional Center. He claims to have written letters to two prison counselors, Timothy Washington and Ada Johnson, in which he described problems with his cellmate and requested a new cell assignment. Dorsey claims that Washington shared the letters with other inmates and that the letters have earned him the reputation of being a "snitch," a dangerous reputation to hold in prison. Dorsey argues Washington's decision to share the letters violated the Eighth Amendment by showing deliberate indifference to his safety.

Washington denies all of this: he says he never received the letters, did not distribute them to other inmates, and did not know that snitches fare poorly in prison. He has moved for summary judgment. Because a genuine dispute of material fact exists for Dorsey's claim, the Court denies Washington's motion for summary judgment.

## Background

Dorsey is serving a life sentence at Stateville Correctional Center for kidnapping

and murder. In 2012, Cornelius Brown was assigned to Dorsey's cell. Dorsey and his cellmate began to argue, but Dorsey claims he did not want their arguments to become physical. Instead, Dorsey wrote two letters: one to Ada Johnson and another to Timothy Washington, both counselors at the prison. To ensure that the letters were only seen by their intended recipients, Dorsey claims he folded and taped the letters, addressed them properly, and watched to ensure that each was collected by prison staff. Inmates play no role in collecting or distributing mail. Dorsey claims that, after he sent the letters, Washington spoke to him about his cellmate assignment.

Several weeks after preparing the letters, Dorsey was surprised to learn that his letters were in the possession of other inmates, who read them aloud. For attempting to resolve his problems through prison administrators, Dorsey gained the reputation of being a "snitch." Dorsey alleges that Washington shared the letters because he was affiliated with the Vice Lords gang, as was Dorsey's cellmate. Washington denies any affiliation with the gang. Now that the letters have been released, Dorsey claims that he spends his days in fear of being assaulted or killed in retaliation.

Washington denies he ever received Dorsey's letters. Accordingly, he denies ever giving the letters to the other inmates. He also denies knowing whether there is animosity towards snitches or whether a snitch may be subject to retaliation by other inmates.

## Discussion

Dorsey claims that Washington's decision to share his letters with other inmates violated the Eighth Amendment by showing "deliberate indifference" to the "substantial risk of serious harm" to which he exposed Dorsey. *Farmer v. Brennan*, 511 U.S. 825,

2

842 (1994). Washington has moved for summary judgment on Dorsey's claim. A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "the evidence of the nonmovant is to believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

Washington has moved for summary judgment on three grounds. First, Washington argues Dorsey has not offered evidence from which a reasonable jury could find that he received the letters, chose to share the letters, or knew that sharing the letters would expose Dorsey to a risk of harm. Second, he argues Dorsey's claim for monetary remedies is barred by Eighth Amendment doctrine and the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(e). Third, Washington contends Dorsey has named the wrong party for injunctive relief, as he lacks the authority to transfer Dorsey to another prison.

For reasons that follow below, the Court denied Washington's motion for summary judgment.

## I.  Deliberate indifference

Washington argues that summary judgment is warranted because Dorsey failed to present enough evidence to permit a reasonable jury to find that he received Dorsey's letters or that he distributed the letters to other inmates with deliberate indifference to the risks this posed to Dorsey. A prison official acts with deliberate indifference if he or

3

she acts despite knowing of a substantial risk of serious harm to the prisoner. *Farmer*, 511 U.S. at 843. Prisoners may face a "substantial risk" if the risk is "attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals" or to "'highly probable' attacks." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). "Serious harm" must be objectively serious enough as to amount to a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

First, Washington argues that Dorsey has not offered evidence from which a reasonable jury could find that he ever received Dorsey's letters. The Court disagrees. A reasonable jury could infer that Dorsey sent his letters to Washington and Johnson; Washington received his letter; and Washington relied on information contained in the letter in a later conversation.

First, Dorsey offers the testimony of Sherry Hunter, an administrator at Stateville prison who testified on mail procedures at the prison. Hunter described how prison employees, not inmates, collect letters placed in the bars of their cells and bring them to counselors. Hunter Dep. at 10-12. She could not recall any incident in which mail picked up by staff was given to another inmate. *Id.* at 12. Hunter also noted that the prison keeps no record of the pickup and delivery of letters. *Id.* at 13.

In Dorsey's declaration, he asserts that he watched prison staff collect each letter from the bars of his cell. Dorsey Decl. ¶ 3. He also states that, several weeks he sent a letter to Washington, Washington relied on the information in the letter when he said he would help Dorsey find a new cell. *Id.* ¶ 5. This evidence would permit a reasonable jury to find that Washington received Dorsey's letter.[1]

---

[1] For this reason, the Court need not address Dorsey's "mailbox rule" argument.

Second, Washington contends that Dorsey has failed to present any evidence that he distributed the letter with deliberate indifference to the risks it would pose for Dorsey. Washington first argues that he could not have acted with deliberate indifference in disclosing the letter, because he never received it. The Court rejects this argument for the reasons discussed above. Next, Washington argues that, even if he distributed the letter, there is no evidence that he was deliberately indifferent to the risk that this would subject Dorsey to significant harm.

The "deliberate indifference" analysis asks whether an individual was subjectively aware of a "substantial risk of serious harm." *Farmer*, 511 U.S. at 842. This may be shown through inferences based on circumstantial evidence or by the fact that the risk was obvious. *Id.*

Dorsey has presented enough circumstantial evidence to permit a reasonable jury to find that Washington was aware of a significant risk of serious harm to him. In Dorsey's letter to Washington, he describes his cellmate as a "knuckle headed young disrespectful Gang Banger." Pl.'s Ex. C, Dorsey Letter to Washington at 1. Dorsey alleges that his cellmate was a member of the Vice Lords, a street gang with which he contends Washington was also affiliated. Dorsey Decl. ¶ 9. Dorsey presents deposition testimony from multiple inmates who testified that addressing problems with a cellmate directly with the cellmate was preferable to reporting the problems to prison administration. Davis Dep. at 24-25, 28; Moore Dep. at 13; Ray Washington Dep. at 9 (Ray Washington is an inmate unrelated to Timothy Washington); Dorsey Dep. at 80. Two testified regarding the violent reprisals snitches usually face. Moore Dep. at 13; Dorsey Dep. at 80. In deciding a motion for summary judgment summary judgment, the

5

Court draws reasonable inferences in favor of the non-moving party. *Tolan*, 134 S. Ct. at 1863. A reasonable jury could infer from these facts that Washington, an experienced prison counselor, recognized the provocative nature of Dorsey's letter and released it anyhow, knowing it would prompt a violent reprisal.

Additionally, for purposes of summary judgment, Dorsey can demonstrate that Washington was subjectively aware of the risk, because a reasonable jury could find that the fact at issue—being perceived as a stool pigeon in prison is dangerous—is obvious. The Seventh Circuit has taken notice of this fact in at least two cases. *See Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) ("Branding an inmate a snitch can expose him to serious harm and may violate the Eighth Amendment."); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) ("[I]t's common knowledge that snitches face unique risks in prison").

Dorsey must also show that the risk of which Washington was aware was a "substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Dorsey offers enough evidence to permit a reasonable jury to find that this was so. A party can establish a substantial risk by showing they are likely to be victim of a "highly probable" attack. *Brown*, 398 F.3d at 911. A reasonable jury could find that being labeled a snitch puts a prisoner in the position of a highly probable attack. In his deposition, Dorsey describes a death threat he allegedly received the very night that the letter was shared. Dorsey Dep. at 59. He lists numerous threats that have since followed, including "[y]ou need to be butchered" and "[i]f you get caught right, your head will be split open." Dorsey Decl. ¶ 13. Thus Dorsey shows sufficient evidence to show a genuine dispute over Washington's knowledge of the substantial risk of serious danger to which he allegedly

exposed Dorsey, and the Court denies Washington's motion for summary judgment.

II. **Monetary relief**

Washington argues he is entitled to summary judgment on Dorsey's claims for monetary relief, as the Seventh Circuit's interpretation of the Eighth Amendment and the PLRA both bar Dorsey from damages. The Court disagrees.

First, Washington argues that a failure-to-protect claim requires a showing of actual injury to support an award of damages. The Seventh Circuit once held this position, see Babcock v. White, 102 F.3d 267 (7th Cir. 1996), but it has abandoned this rule. Calhoun v. DeTella, 319 F.3d 936 (7th Cir. 2003). In Babcock, the Seventh Circuit held that a plaintiff could not recover any damages on an Eighth Amendment claim resting on a "fear of assault" that did not include actual injury. Babcock, 102 F.3d at 272. Babcock permitted recovery for a claim lacking an injury, however, if the plaintiff showed the official's conduct was motivated by an official's "malicious or sadistic conduct." Id. at 270. The reason was that claims, even those lacking a physical injury, arising from an official's malicious intent can be considered excessive force claims, rather than conditions-of-confinement claims. Because excessive force claims require a lower threshold of objective harm than conditions-of-confinement claims, they do not require the same showing of physical injury. Id. at 273.

In Calhoun, the Seventh Circuit departed from Babcock. It described the passage in Babcock that rejected the possibility of nominal damages as dicta and held that nominal damages are available for an Eighth Amendment violation that is not accompanied by physical injury. Calhoun, 319 F.3d at 941-42. Some district judges within the Seventh Circuit have reconciled these two cases by holding that nominal

7

damages are now only available for injuries arising from malicious or sadistic conduct. *See, e.g. Czapiewski v. Thomas*, No. 16 C 426, 2017 WL 1274160 (E.D. Wis. Apr. 3, 2017) (nominal damages are appropriate in cases in which prison officials acted maliciously or sadistically); *Donaldson v. Baldwin*, No. 16-cv-01128-MJR, 2017 WL 513918 (S.D. Ill. Feb. 8, 2017) (same); *McCutcheon v. Schicker*, No. 3-13-cv-00779-JPG-PMF, 2016 WL 1068821 (S.D. Ill. Feb. 8, 2016) (same); *Knowlin v. Raemisch*, No. 08-cv-745-bbc, 2009 WL 2135122 (W.D. Wis. July 14, 2009) (same).

The Court respectfully disagrees. First, nothing in the text of *Calhoun* limits its reasoning to Eighth Amendment injuries arising from malicious or sadistic conduct. Indeed, if the impact of *Calhoun* was limited to malicious or sadistic conduct, it is not clear why the Seventh Circuit would have needed to address *Babcock*, which already permitted recovery for injuries arising from such conduct. *See Babcock*, 102 F.3d at 270. Consistent with *Calhoun*, the Court concludes that nominal damages are available to Dorsey in the absence of a showing of physical injury, irrespective of whether Washington acted maliciously or sadistically. *See also Gevas v. Harrington*, No. 10-cv-493-SCW, 2014 WL 4627689 (S.D. Ill. Sept. 16, 2014).

Next, Washington argues the PLRA bars Dorsey from recovery. The PLRA, however, only bars a prisoner from recovering compensatory damages for a claim of mental or emotional injury unless the prisoner also has a physical injury. 42 U.S.C. § 1997e(e). Punitive and nominal damages remain available for such a claim. *Calhoun*, 319 F.3d at 940-41. Moreover, section 1997e(e) does not restrict recovery of damages for non-physical injuries other than emotional or mental injuries, such as, when

appropriate, damages for deprivation of the constitutional right itself.[2]  *Id.*

Because Dorsey has not alleged any physical injury, he cannot recover compensatory damages for mental or emotional injuries on his constitutional claim.  The Court denies Washington's motion to the extent it addresses any other damages.

**III.    Injunctive relief**

Washington has moved for the Court to grant summary judgment on Dorsey's request for an injunction transferring him to another prison.  The proper party for an injunction in prison litigation is the official that "would be responsible for ensuring that any injunctive relief is carried out."  *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).  Washington, a prison counselor, lacks the authority to transfer Dorsey to another prison.  Dorsey notes that Washington did not raise this argument earlier in the proceeding.

Dorsey proposes using Federal Rule of Civil Procedure 19 to seek joinder of the proper party.  Rule 19, however, generally concerns lawsuits that should not proceed without absent litigants who have an interest that would be affected by the proceeding.  *See* Fed. R. Civ. P. 19(a)(1).  That is not the situation here.  Rule 15, not Rule 19, is the proper mechanism here.  Rule 15 permits a plaintiff to amend his or her complaint with the consent of the opposing party or the court's leave.  Fed. R. Civ. P. 15(a)(2).  If Dorsey wishes to pursue his claim for injunctive relief, he should move to amend his complaint to add the appropriate party.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion for summary

---

[2] The Court need not and does not now address whether the latter type of damages is recoverable in a failure-to-protect case.

judgment. [dkt. no. 55]. The case is set for a status hearing on October 26, 2017 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 20, 2017